UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTOPHER J. MARTINO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | Case No. 1:22-cv-00047-SLC |

## **OPINION AND ORDER**

Plaintiff Christopher J. Martino appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). Because at least one of Martino's arguments is persuasive, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### **I. FACTUAL AND PROCEDURAL HISTORY**

Martino applied for SSI on February 25, 2020, alleging disability as of January 31, 2019. (ECF 12 Administrative Record ("AR") 16, 114, 134, 268-73, 295-97). His claim was denied initially and upon reconsideration. (AR 16, 172-80). After a timely request (AR 191-93), a hearing was held on July 29, 2021, before administrative law judge ("ALJ") Terry Miller, at which Martino, who was represented by counsel, and a vocational expert ("VE") testified. (AR 42-101). On September 24, 2021, the ALJ rendered an unfavorable decision to Martino, concluding that he was not disabled because he could perform work that exists in significant numbers in the national economy despite the limitations caused by his impairments. (AR 16-29).

Martino's request for review was denied by the Appeals Council (AR 7-12), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 416.1481.

Martino filed a complaint with this Court on February 9, 2022, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Martino alleges that: (1) the ALJ cherry picked the record, and that (2) he failed to build a logical bridge between the evidence and the residual functional capacity ("RFC") conclusion and to support that RFC with substantial evidence. (ECF 18 at 5).

At the time of the ALJ's decision, Martino was thirty-four years old (AR 268), had a sixth-grade education (AR 53, 290), and had no relevant work experience (AR 27, 94; *see also* AR 289-91). In his application, Martino alleged disability due to bipolar disorder, "ADD," sleep apnea, and "OCD." (AR 289).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or

substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking SSI must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 416.920(e).

(citations omitted); *see also* 20 C.F.R. § 416.920. "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a finding that the claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On September 24, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 16-29). At step one, the ALJ concluded that Martino had not engaged in substantial gainful activity since February 25, 2020, his application date. (AR 18). At step two, the ALJ found that Martino had the following severe impairments: history of low back pain/scoliosis, cervical spine pain and chronic right shoulder pain, morbid obesity, bipolar disorder/depression, hoarding disorder, ADHD, generalized anxiety disorder, posttraumatic stress disorder ("PTSD"), and obsessive-compulsive disorder ("OCD"). (*Id.*).

At step three, the ALJ concluded that Martino did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19). The ALJ then assigned Martino the following RFC:

> The claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he is limited to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to never climbing ladders, ropes, scaffolds. He is limited to no overhead reaching with the dominant right upper extremity and only frequent handling and fingering with the dominant right upper extremity. In addition, the claimant is limited to no operational control of dangerous moving machinery and no work at unprotected heights. Mentally, the claimant is limited to understanding, carrying out and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time no more than 30 days, and requires little or no judgment to perform simple

tasks), with the ability to sustain those tasks through the eight-hour workday without frequent redirection to task. The ability to use judgment in making work-related decisions is limited to making only simple work-related decisions. He should not work in an environment that is stringently production or quota based and thus may not perform fast-paced assembly line type of work but can meet production requirements that allow him to sustain a flexible and goal-oriented pace. The claimant must work in a stable setting where there are no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; cannot engage in tandem tasks. He is limited to only superficial interactions with supervisors, coworkers, and the general public defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short but allows the supervisors to give instructions.

(AR 21).

The ALJ determined at step four that Martino had no past relevant work. (AR 27). At step five, the ALJ concluded that given his age, education, work experience, and RFC, Martino could perform jobs that exist in substantial numbers in the national economy including retail marker, cleaner, and laundry folder. (AR 28). As such, Martino's application for SSI was denied. (AR 29).

*C. Mental RFC*

The Court will begin with Martino's argument that the ALJ failed to build a logical bridge between the mental RFC and his conclusions. Specifically, Martino contends that the ALJ erred in concluding in the mental RFC that Martino could sustain tasks throughout an eight-hour workday without frequent redirection.[2] Martino's argument is persuasive.

---

[2] Martino further argues that the ALJ failed to include proper limitations to concentration, persistence, and pace, and that the RFC is erroneous because the ALJ should have conducted a consultative examination before issuing its decision. (ECF 18 at 17). Because the case is remanded for further administrative proceedings, the Court will not analyze these arguments. On remand, the ALJ may decide to order a consultative examination if Martino's "medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (citing 20 C.F.R. §§ 416.912(f), 416.917)); *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). As regards the RFC limitations in concentration, persistence, and pace, the ALJ should take care to further evaluate whether they sufficiently address "moderate" limitations in concentration, persistence, and pace, in light of Martino's mental impairments. (*See* ECF 18 at 14-17).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the most." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1995); *see* 20 C.F.R. § 416.945(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

The ALJ penned a decision relying primarily on what the ALJ perceived to be Martino's "progress" and "stability" in mental health. In effect, the ALJ considered several mental status exams purportedly evidencing Martino's condition had improved with treatment, citing to mental status exams dated May and November 2019 from Northeastern Center (AR 25, 26, 393, 397), a November 2019 mental status exam from Park Center (AR 25, 414), and an October 2020 note from Martino's therapy record at Bowen Center (AR 25, 536). The ALJ further stated that Martino was "generally stable" and had "normal" mental status exams, notably as to his anger, appetite, grooming, behavior, mood, and affect. (AR 25). An October 2020 mental status exam revealed unremarkable results (*id.* (citing AR 542)), and a May 2021 mental status exam at

Bowen Center indicated that Martino's attention "was good" (*id.* (citing AR 548-49))[3]. Therefore, the ALJ concluded that while "[m]ental status exams have generally reflected some degree of abnormalities consistent with bipolar disorder, as well as depressive and anxiety disorders, including unkempt and disheveled appearance," Martino's "behavioral therapy records suggest that his mental functioning is generally stable, outside of mild periods of heightened symptoms secondary to relational and life stressors, such as not getting his shot on time and interactions with his biological mother and twin sister." (*Id.* (citations omitted); *see* AR 27).

In further support of his conclusion, the ALJ cited the findings of the state psychologist sources at the initial and reconsideration levels, both of whom he found to be "persuasive," stating "[b]oth sources did provide good explanations of the claimant's treatment evidence and objective findings, as well as the claimant's allegations, and their opinions are generally consistent with the claimant's overall course of behavioral therapy and some psychotropic intervention." (AR 26). The ALJ found the state psychologists' opinions particularly persuasive regarding Martino's normal mental status exams, reports of him doing well, his overall improvement, and his stable mental functioning. (AR 26-27).

At the initial and reconsideration levels, the state psychologists limited Martino to the following: "understand, carry out and remember simple instructions," "make judgments commensurate with functions of simple, repetitive tasks," "respond appropriately to brief supervision and interactions with coworkers and work situations," and "deal with routine changes in a work setting." (AR 111, 130-31). In his conclusion, the ALJ included the limitations imposed by the state psychologists, concluding the following:

> Mentally, the claimant is limited to understanding, carrying out and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time no more than 30 days, and

---

[3] The cited reference appears to be a December 2020 visit instead of a May 2021 visit. (AR 540-44).

> requires little or no judgment to perform simple tasks), with the ability to sustain those tasks through the eight-hour workday without frequent redirection to task. The ability to use judgment in making work-related decisions is limited to making only simple work-related decisions. He should not work in an environment that is stringently production or quota based and thus may not perform fast-paced assembly line type of work but can meet production requirements that allow him to sustain a flexible and goal-oriented pace. The claimant must work in a stable setting where there are no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; cannot engage in tandem tasks. He is limited to only superficial interactions with supervisors, coworkers, and the general public defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short but allows the supervisors to give instructions.

(AR 21).

At the outset, the Court notes that Martino was diagnosed with bipolar disorder and depression, ADHD, generalized anxiety disorder, and PTSD, among a variety of other severe impairments. (AR 18). The courts in this Circuit have repeatedly cautioned that "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citation omitted); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[T]he ALJ demonstrated a fundamental, but regrettably all-too-common, misunderstanding of mental illness . . . . As we have explained before, a person who suffers from a mental illness will have better days and worse days . . . ." (citations omitted)); (*see also* AR 25 (listing Martino's medications (citing AR 404-37, 481))). "[B]ipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). As such, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016).

Even when a claimant displays signs of progress, courts have levied against equating such progress with an ability to work full-time. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."); *Deloris J. on Behalf of Devonte J. v. Saul*, No. 1:19-CV-30-WCL-JPK, 2019 WL 7669924, at *6 (N.D. Ind. Dec. 19, 2019) ("[I]mprovement can occur without enabling [the] claimant to perform full-time competitive work." (citations omitted)). "[A]n ALJ must approach issues such as treatment and medication with caution when a claimant has a mental illness." *Brubaker v. Berryhill*, No. 1:17-cv-00010-SLC, 2018 WL 2214051, at *9 (N.D. Ind. May 14, 2018) (citation omitted) (remanding case despite that the claimant "admitted that she was able to cope with her illnesses and work in the past when she received regular treatment and complied with her medications"). Thus, although the ALJ largely predicated his RFC limitations on the fact that Martino displayed stability and improvement in his mental health, that alone does not necessarily translate to Martino's ability to work full-time. *See Murphy*, 759 F.3d at 819.

If improvements and stability in mental health may not translate to an ability to work full-time, the ALJ's conclusion that Martino was stable and able to sustain full-time work is not substantially supported by the medical record and by Martino's work history.

1. <u>Medical Record</u>

First, the medical record suggests that the ALJ may have overstated Martino's improvement. The ALJ acknowledged that Martino had "mild periods of heightened symptoms secondary to relational and life stressors . . ." (AR 25, 27), but Martino's variable symptoms suggest they were more than "mild." Additionally, the record evidences that there were several challenges during Martino's treatment. Specifically, the ALJ failed to mention that notes from

Park Center spanning eleven months, from November 2019 to October 2020, all demonstrated that Martino had issues taking his treatment and that Martino "needs assistance with medical appointments and/or taking medications as prescribed." (AR 417, 426, 432, 448, 494, 499). A March and May 2020 Northeastern Center progress report stated that Martino had reported "little progress" in several mental health areas, including impulsivity and hyperactivity, which made him "snap[] at people," and depression and mania. (AR 948, 956). An April 2020 Park Center statement of progress reported that while Martino was engaged, he was inconsistent in his participation in treatment and "show[ed] limited progress," though he had improved ratings for some mental health objectives. (AR 434). A July 2020 Bowen Center note documented Martino's report that "[t]wo weeks before his [bipolar disorder injection shot], he gets irritable and withdrawn." (AR 505). A September 2020 psychiatric evaluation at Bowen Center relayed Martino's report that he had "ups and downs with his moods," that he would "get angry quick, and it is hard to calm down once angry. . . he will punch his front door," and that "he wants to sleep all day to stop hurting." (AR 545).

Further, Martino reported having panic attacks, the latest one occurring a month before that visit, and that "[h]e is able to start tasks, but he does not always complete the tasks." (AR 546). An October 2020 Park Center visit reflects that Martino was noncompliant with his treatment, was unreachable, and made "little progress" with therapy after being transferred to another therapist in Park Center. (AR 501). During a December 2020 therapy evaluation, Martino displayed concentration issues. (AR 511 ("Chris was mostly engaged the whole session, but was also distracted as he was shopping during his appointment.")). That same month, Martino had missed his injection to treat his bipolar disorder, which made him "upset," and contributed to his "ups and downs with moods." (AR 540). Martino relayed that he was "getting

angry quick." (*Id.*). The nurse practitioner assessed that Martino was "worsening" in his bipolar disorder, general anxiety disorder, and PTSD. (AR 541). He further presented symptoms of irritability, anxiety, and mood swings. (*Id.*).

Thus, the medical record indicates that Martino's bipolar treatment often fell short and that he experienced ups and downs with his moods. *See Scott*, 647 F.3d at 739-40 (noting that while the claimant had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia). There is documented evidence of Martino's limited progress, difficulty to comply with treatment, limited effects of his medication, lack of concentration and focus, and even regression in several mental impairments. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general and bipolar disorder in particular (in part because it may require a complex drug regimen to deal with both the manic and the depressive phases of the disease) may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." (citations omitted)). Thus, the record reflects that Martino's progress was more limited than the ALJ stated in his decision. Remand is required on this basis alone, as the ALJ failed to "approach issues such as treatment and medication with caution when a claimant has a mental illness." *Brubaker*, 2018 WL 2214051, at *9.

2. <u>Work History</u>

Second, Martino's work history, in addition to the record evidence, puts into question the adequacy of the mental limitations in the RFC. "[W]hile the ALJ assessed that [Martino] 'improved' during the relevant period . . . , the ALJ 'did not explain how improvement, without more, equates to the ability to work full time.'" *Tritch v. Kijakazi*, No. 1:20-CV-00331-SLC, 2021 WL 4438188, at *10 (N.D. Ind. Sept. 28, 2021) (citing *Daniel W. v. Saul*, No. 19 C 1684, 2020 WL 3469217, at *3 (N.D. Ill. June 25, 2020)).

The ALJ broached the subject of Martino's work history at step one, stating that he had "unsuccessful work attempts," but attributed the lack of success to his physical impairment, given Martino's report that he "had to quit because he was not working fast enough due to back pain." (AR 18). The ALJ found that Martino had no substantial gainful activity. (*Id.*). However, at step three, the ALJ noted Martino's testimony that he "participated in . . . an organization that helped people reenter the workforce," and that he worked at an automotive center but resigned because "he was asked to perform tasks that were not in his job description" and "was constantly asked to do tasks he already performed." (AR 23). The ALJ further stated that Martino "stopped working because he could not keep up with his responsibilities," finding that testimony consistent with some of his diagnosed mental impairments. (AR 25). The ALJ's discussion of Martino's work history was limited to those few observations, however, Martino's testimony (and, in part, the medical record) paint a broader picture.

Martino had no employment in 2012, 2017-2020, and some self-employment in 2011, with any lack of employment from 2010-2017 being attributable to him being on social security. (AR 56). Employment picked up for Martino in 2017, when he held two jobs, one of which he worked "full shift." (AR 57). In 2018, he also held a part-time position at Northeastern Center for six to eight months. (AR 55-56). Martino's testimony reflects that his last employment occurred in 2020 when he held a full-time job at CJ Automotive for three to four weeks. (AR 18, 54-55).

As to the reasons for his history of failed employment, Martino testified that he was unable to take feedback, keep up with work, and understand what he is supposed to do, in addition to his back pain and that he cared for his father at the time. (AR 55, 86, 90, 92). He further testified that he would get angry at work. (AR 78, 91-92). Elements in the record support

Martino's testimony. A March 2020 Park Center note states that he "[h]as worked a few jobs but has difficulty maintaining employment" and that he has trouble with focus and attention. (AR 421). A July 2020 Bowen Center exam reflects that "[d]ue to depression, [Martino] procrastinates, struggles to maintain a daily routine and be organized." (AR 474, 516). As of October 2020 and January 2021, he was still receiving treatment for this issue. (AR 522-23, 529-30). Again, several medical notes reported him experiencing ups and downs with his moods. (AR 540, 545, 948, 956). This medical evidence supports Martino's testimony regarding his difficulty at work, especially when compounded by the medical evidence displaying his limited progress and challenges with treatment for his bipolar disorder.

Of course, Martino's reasons for his unsuccessful work history are mainly based on his testimony, and the ALJ concluded that Martino's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 23). However, besides stating that Martino was "generally stable" (AR 27), the ALJ did not explain how Martino's claims regarding his difficulty with feedback and to keep up with his responsibilities conflicted with the record. On the contrary, the ALJ's own conclusions suggest that he found Martino's testimony regarding his reasons for failing to maintain employment at least somewhat persuasive. (*See* AR 18 (finding past work unsuccessful); AR 25 (finding testimony about his reason for ending employment "consistent generally with the claimant's [mental health] diagnoses. . . .")).

An ALJ may commit error when he fails to discuss a claimant's ability to work full-time when there was no full-time employment in the past and the medical opinions in the record did not specifically discuss the claimant's ability to work full-time. *Soga v. Astrue*, No. 2:11-CV-90 JVB, 2012 WL 1085663, at *7 (N.D. Ind. Mar. 29, 2012). A claimant's significant difficulty

13

with past part-time employment will bolster this conclusion. *Id.* Here, none of the medical opinions in the record "spoke specifically about sustaining full-time work." *See id.* And although Martino had some full-time employment at CJ Automotive, the ALJ specifically found that it was unsuccessful because Martino maintained it for only three to four weeks. (AR 18). Thus, not only is the record devoid of evidence that Martino could sustain full-time employment, such that the ALJ could "rely on [it] to justify finding that [Martino] could, for the first time in his life, sustain full-time employment," *Soga*, 2012 WL 1085663, at *7. But the record and the ALJ's decision reflect that Martino *could not* sustain full-time employment based on his past failed attempts. The ALJ specifically concluded that Martino had no successful past part-time employment and that Martino had difficulties of various nature in his jobs. (*See* AR 18, 23, 25). Therefore, the ALJ should have considered the extent of Martino's failure at employment and the reasons behind his unsuccessful attempts, before concluding that Martino could perform full-time work, which by definition requires Martino to work eight-hour workdays. SSR 96-8p, 1996 WL 374184, at *1 (defining doing sustained work on a "regular and continuing" basis to mean "8 hours a day, for 5 days a week, or an equivalent work schedule"); *see Tritch*, 2021 WL 4438188, at *10. As such, the ALJ's failure to establish how Martino could maintain full-time employment, in light of Martino's difficulties, constituted further error. *Soga*, 2012 WL 1085663, at *7.

"[A]lthough the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant."). The ALJ erred by failing to fairly consider

Martino's work history and the medical record evidence of limited progress and greater fluctuation in mental health symptoms.

In conclusion, the ALJ failed to build "a logical bridge from the evidence to his conclusion" that Martino can sustain work during an eight-hour workday, five days a week.[4] *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). Accordingly, on remand, the ALJ should evaluate whether Martino can sustain tasks throughout an eight-hour workday, five days a week, and whether the mental RFC contains sufficient limitations to address Martino's mental impairments.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Martino and against the Commissioner.

SO ORDERED.

Entered this 13th day of March 2023.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] Because this case is being remanded to reconsider the mental RFC with respect to Martino's ability to work full-time, the Court need not reach Martino's argument that the ALJ cherry picked the record. (*See* ECF 18 at 8-14).